AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20) ☐ Original ☐ Duplicate Original

| LODGED<br>CLERK, U.S. DISTRICT COURT<br>9/30/21<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY: RO DEPUTY |

# UNITED STATES DISTRICT COURT

for the

Central District of California

| FILED<br>CLERK, U.S. DISTRICT COURT<br>Sept 30 2021<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY: ib DEPUTY |

United States of America

v.

ARTHUR MURADYAN,

Defendant

Case No. 2:21-mj-04539-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of September 8, 2021 in the county of Los Angeles in the Central District of California, the defendant violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution of a Controlled Substance |

This criminal complaint is based on these facts:

 *Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/ Blake MacLearnsberry
*Complainant's signature*

Blake MacLearnsberry, ATF SA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: September 30, 2021

*Judge's signature*

City and state: Los Angeles, California

Hon. Alexander F. MacKinnon, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT**

I, Blake MacLearnsberry, being duly sworn, declare and state as follows:

**PURPOSE OF AFFIDAVIT**

1. This affidavit is made in support of a criminal complaint and arrest warrant against ARTHUR MURADYAN ("MURADYAN"), for a violation of 21 U.S.C. § 841(a)(1): distribution of a controlled substance.

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested search warrant and does not purport to set forth all of my knowledge or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.

**BACKGROUND OF AFFIANT**

3. I am a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), United States Department of Justice, and have been so employed since 2019. Prior to being employed as an ATF Special Agent, I was an accountant for approximately six years working in both public accounting and corporate accounting. I have performed reviews, compilations, tax preparation, internal audits, and many other accounting tasks and am well versed in audit practice and procedure, Internal Revenue Codes, and other taxation law.

4.  I graduated from Seattle University with Bachelor of Arts degrees in Accounting and Marketing.  I also graduated from the ATF's Special Agent Basic Training and from the Department of Homeland Security's Criminal Investigator Training Program.  I received training and have experience in the trafficking of firearms and controlled substances, including but not limited to the identification of controlled substances and the use of coded language, arson, and explosives.  I participated in dozens of investigations involving the illegal sales, transfer, and possession of firearms and controlled substances and interviewed defendants, informants, and witnesses with first-hand knowledge of methods for trafficking the same.  Additionally, I participated in many aspects of firearms and gang investigations, including conducting surveillance and the use of confidential informants and undercover ("UC") agents to make controlled purchases of controlled substances and/or firearms.

**SUMMARY OF PROBABLE CAUSE**

5.  Between August and September 2021, during recorded and monitored meetings, an ATF confidential informant (the "CI") purchased firearms on multiple occasions from MURADYAN. Specifically:

    a.  On August 25, 2021, MURADYAN sold the CI what appeared to be a self-manufactured[1] AR-15 style semi-automatic rifle with no serial number and a corresponding 10-round magazine, a 9mm caliber semi-automatic handgun with a

---

[1] A "self-manufactured" firearm, also known as a "ghost gun," is a firearm that is made from component parts and does not have a serial number.

corresponding 8-round magazine, and a Glock 9mm caliber semi-automatic handgun with a corresponding 6-round magazine.

  b. On September 2, 2021, MURADYAN sold the CI what appeared to be a self-manufactured AR-15 style short barrel rifle with no serial number and a corresponding 10-round magazine, and a Ruger .22 caliber semi-automatic handgun with a corresponding .22 caliber magazine.

  c. On September 8, 2021, MURADYAN sold the CI what appeared to be a Glock machinegun conversion device, a 9mm caliber semi-automatic handgun with a corresponding 12-round high capacity magazine, and approximately one pound of suspected methamphetamine.

  d. MURADYAN arranged to sell the CI a machinegun, an AR-15 style rifle, two handguns, and a pound of methamphetamine on September 29, 2021.

 6. During the execution of a search warrant at MURADYAN's residence on the afternoon of September 29, 2021, law enforcement officers seized approximately 20 firearms, including a suspected sawed-off shotgun and a suspected AK-47 rifle; hundreds of rounds of assorted ammunition; and firearms and ammunition component parts.

 7. DEA lab results confirmed that the substance MURADYAN sold the CI on September 8, 2021 tested positive for 423 grams of methamphetamine.

 8. The AR-15 style short barrel rifle MURADYAN sold the CI on September 2, 2021 was determined to be a rifle having a

barrel of less than 16 inches in length, and thus qualifies as a "firearm" as defined in 26 U.S.C. § 5845(a)(3).

    a. As such, pursuant to 26 U.S.C. § 5861(d), MURADYAN was required to register this firearm with the National Firearms Registration and Transfer Record. MURADYAN does not have any firearms registered to him.

    b. Also pursuant to 26 U.S.C. 5861(i), this firearm was required to have a serial number. This firearm had no serial number.

    9. The Glock machinegun conversion device MURADYAN sold the CI on September 8, 2021 was determined to be a part designed and intended solely and exclusively for use in converting a weapon into a machinegun. It thus qualifies as a "firearm" as defined in 26 U.S.C. § 5845(a)(6) and a "machinegun" as defined in 26 U.S.C. § 5645(b).

    a. As such, pursuant to 18 U.S.C. § 922(o), it was unlawful for MURADYAN to possess the machinegun.

    b. Also, pursuant to 26 U.S.C. § 5861(d), MURADYAN was required to register this firearm with the National Firearms Registration and Transfer Record. MURADYAN does not have any firearms registered to him.

    c. Also pursuant to 26 U.S.C. 5861(i), this firearm was required to have a serial number. This firearm had no serial number.

    10. MURADYAN does not possess a federal firearms license.

11. MURADYAN has two felony convictions for burglary, and as such, he is prohibited from possessing firearms or ammunition.

## STATEMENT OF PROBABLE CAUSE

12. Based on my training and experience, my knowledge of and participation in the investigation described below, my review of audio and video recordings, my discussions with the CI, my review of text messages and recorded phone calls between MURADYAN and the CI, my review of reports and records, and my conversations with other law enforcement agents, I know the following facts:

**A.    Background of Investigation of MURADYAN**

13. On or about July 28, 2021, ATF Task Force Officer ("TFO") Detective Christopher Vasquez and I were contacted by Glendale Police Department Officer Dan Buzzard. Officer Buzzard stated that he was investigating Arthur MURADYAN for illegally selling firearms to various gang members within the San Fernando Valley, in the City of Los Angeles, Central District of California.

14. On August 11, 2021, TFO Vasquez instructed the CI[2] to

---

[2] The CI is working for law enforcement in return for monetary compensation. The CI was convicted of RICO charges over 10 years ago and served 2 years in prison. The CI has other convictions, including a 1998 felony conviction for possession of a controlled substance; misdemeanor convictions for DUI in 2004 and 2006; and misdemeanor convictions for driving on a suspended/revoked license in 2006, 2014, and 2018. The CI also worked for law enforcement in exchange for leniency following sentencing. The CI has assisted investigators in multiple investigations, and has provided credible and reliable information.

be introduced to MURADYAN by another confidential informant working with a different law enforcement agency ("CI-2").[3] During recorded and monitored operations on August 11 and August 17, 2021, the CI was introduced to MURADYAN by CI-2, and during these operations, the CI and CI-2 purchased firearms from MURADYAN.

      **B.    Overview of Controlled Purchases of Firearms from MURADYAN**

15.   Before each of the purchases of firearms from MURADYAN discussed below, the CI was provided with ATF funds for the purchase and was equipped with audio/video recording devices and a live audio transmitting device.

16.   Before and after each of the purchases of firearms from MURADYAN discussed below, the CI was searched for contraband and was found not to have any other firearms or contraband on him/her.

17.   After each of the purchases of firearms from MURADYAN discussed below, law enforcement met with the CI and took custody of the purchased firearms and contraband, transported them to the ATF Los Angeles Field Division, and booked them into ATF property.

---

[3] CI-2 is working for law enforcement in return for leniency consideration for pending charges of identity theft and felon in possession of a firearm. CI-2 has prior felony convictions for identity theft and unauthorized use of personal identifying information in 2014, as well as unauthorized use of personal identifying information and grand theft in both 2009 and 2010. The CI has assisted investigators and has provided credible and reliable information.

18. All phone calls and text messages made to and from the phone number that the CI uses for this investigation have been recorded and/or verified by law enforcement.[4]

### C. August 25, 2021: MURADYAN Sells the CI Three Firearms and Ammunition

19. On August 25, 2021, TFO Vasquez instructed the CI to purchase an AR-15 style rifle and two handguns from MURADYAN.

20. At approximately 2:00 p.m., the CI arrived at the Best West Car Wash located at 8263 Laurel Canyon Boulevard, North Hollywood, California and waited for MURADYAN's arrival.

21. At approximately 2:35 p.m., surveillance units observed MURADYAN arrive at the car wash and park near the CI's location. Surveillance units observed the CI enter the front passenger seat of MURADYAN's vehicle.

22. Based on my review of reports, the CI's audio and video recordings, and my conversations with other law enforcement agents, I know the following:

    a. Inside the vehicle, MURADYAN produced firearms and gave them to the CI. These firearms included, specifically:

        i. One self-manufactured, AR-15 style, .556 caliber, semi-automatic rifle, bearing no serial number, and a corresponding 10 round, .556 caliber magazine;

        ii. One Smith & Wesson, M&P9, 9mm caliber, semi-automatic handgun, bearing serial number HVD3909, and a

---

[4] I have reviewed all of the recorded calls described below, and, as I am familiar with MURADYAN's voice as a result of my work on this investigation, I recognized MURADYAN as the speaker and user of telephone numbers (310) 855-4479

corresponding 8 round, 9mm caliber magazine; and

        iii. One Glock, Model 43, 9mm caliber, semi-automatic handgun, bearing serial number AFVN022, and a corresponding 6 round, 9mm caliber magazine.

        (I) Subsequent to the purchase of firearms on August 25, 2021, I learned that ATF Special Agent James Gustaw had determined that this firearm had originally been purchased in the Las Vegas area of Nevada by an individual other than MURADYAN and therefore had been transported across interstate lines to California.

    b. The CI gave MURADYAN $3,000 for the AR-15 style rifle, $2,000 for the Smith and Wesson handgun, and $2,000 for the Glock handgun.

    c. After the money exchange, the CI, with MURADYAN's assistance, carried the firearms to the CI's vehicle and placed them inside.

    d. During the controlled purchase, MURADYAN provided the CI with his cellular phone number of (310) 855-4479. The CI also provided MURADYAN with the CI's phone number.

    23. In September of 2021, ATF Interstate Nexus Expert Alexander Liwienski examined the serialized firearms that were obtained from MURADYAN and confirmed that the firearms were manufactured outside of the State of California.

    **D. MURADYAN Calls and Texts the CI About Additional Firearms Transactions**

    24. On August 30, 2021, MURADYAN, using the phone number he provided to the CI, called the CI regarding additional

8

firearms purchases. Based on my review of the recording of this phone call, I learned the following:

    a. During the call, the CI asked who the call was from, and MURADYAN answered, "Arthur."

    b. During the conversation, the CI and MURADYAN spoke about buying and selling firearms. The CI, using coded language, asked MURADYAN if he had some "different ones."

        i. Based on my training and experience, and knowledge of this investigation, I understood that "different ones" was coded language referring to various types of firearms.

    c. MURADYAN then told the CI, "I'm not home right now, let me get home and I'll take some pictures and I'll send it to you."

        i. Based on my training and experience and my participation in this investigation, I believe MURADYAN was referring to firearms he kept at his residence when he stated that he would "let me get home and I'll take some pictures" to send to the CI.

25. Later that day, MURADYAN, using the same cell phone number, texted multiple pictures of firearms to the CI. Based on my review of the photographs, I know the following:

    a. Seven photographs sent by MURADYAN depicted seven semi-automatic handguns;

    b. One photograph depicted one shotgun style revolver;

    c. One photograph depicted one AK-47 style rifle with an extended magazine; and

        d.    One photograph depicted one AR-15 style rifle.

26.    On August 31, 2021, the CI spoke on the phone with MURADYAN, who used the same phone number, about purchasing the firearms of which MURADYAN had sent pictures. Based on my review of the recording of this conversation, I know the following:

        a.    During the phone call, MURADYAN agreed to sell the CI an AR-style rifle and a Ruger pistol. MURADYAN and the CI repeatedly used the terms "AR" and "Ruger" on the call.

27.    Additionally, the CI asked about purchasing a "Glock switch," which MURADYAN agreed to sell to the CI for $600.

        a.    Based on my training and experience, a "Glock switch" is a device that makes a semiautomatic handgun into a fully-automatic machine gun.

**E.    September 2, 2021: MURADYAN Sells the CI an Unregistered and Unserialized Short Barrel AR-15 Style Rifle and a Stolen Pistol, and Discusses Selling a Machinegun Conversion Device and a Grenade Launcher**

28.    At approximately 3:00 p.m. on September 2, 2021, the CI arrived at the Best West Car Wash located at 8263 Laurel Canyon Boulevard, North Hollywood, California and waited for MURADYAN's arrival.

29.    At approximately 3:30 p.m., surveillance units observed MURADYAN exit his residence and enter his vehicle, which was parked in the driveway of his residence. Surveillance units followed MURADYAN and observed him arrive at the car wash and park near the CI's location. Surveillance units observed the CI enter the front passenger seat of MURADYAN's vehicle.

30.  Based on my review of reports, the CI's audio and video recordings, and my conversations with other law enforcement agents, I know the following:

    a.  Inside the vehicle, MURADYAN produced firearms and gave them to the CI.  The items included, specifically:

        i.  One self-manufactured, short-barreled, .556 caliber, semi-automatic, AR-15 style rifle, bearing no serial number with a corresponding 10 round, .556 caliber magazine; and

        ii.  One Ruger, SR-22P, .22 caliber, semi-automatic handgun, bearing serial number 360-25303, with a corresponding .22 caliber magazine.

    b.  The CI gave MURADYAN $3,000 for the AR-15 style and $2,000 for the Ruger handgun.

    c.  During the controlled purchase, MURADYAN told the CI that the "Glock switch" was still being made and that MURADYAN would bring and sell it to the CI at some point in the future.  MURADYAN also told the CI that MURADYAN had a grenade launcher that he would sell to the CI.  Additionally, the CI asked MURADYAN if MURADYAN could sell the CI any methamphetamine, to which MURADYAN responded affirmatively and said he would sell the CI methamphetamine the next time they met.

    d.  After the controlled purchase concluded, the CI exited MURADYAN's vehicle with the firearms, carried them to the CI's vehicle, and placed them inside.

31.  In September of 2021, ATF Interstate Nexus Expert SA Tiffany Lamphere examined the self-manufactured, AR-15 style,

.556 caliber, semi-automatic rifle, bearing no serial number, purchased from MURADYAN on September 2, 2021. Based on my review of reports, I know the following:

    a. The rifle was determined to have a barrel of less than 16 inches and therefore qualifies as a "firearm" as defined in Title 26 U.S.C. § 5845(a)(3).

    b. Furthermore, the rifle bore no marks of or serial number, as required by 26 U.S.C. § 5842.

32. In September of 2021, ATF TFO Williams conducted a firearm inquiry on the Ruger handgun purchased from MURADYAN, using a California firearms database and the Ruger's serial number. Based on my conversation with TFO Williams, I learned the following:

    a. The Ruger handgun had been reported stolen to the Henderson Police Department located in Henderson, Nevada on December 04, 2018.

33. In September of 2021, ATF SA Alexander Liwienski examined the Ruger handgun purchased from MURADYAN and confirmed that it was manufactured outside of the State of California.

    **F. September 8, 2021: MURADYAN Sells the CI a Machinegun Conversion Device, a Semi-Automatic Pistol, and Approximately One Pound of Suspected Methamphetamine**

34. In the days after the controlled purchase on September 2, 2021, the CI and MURADYAN spoke in a series of recorded phone calls. Based on my review of the recordings of these conversations, I know the following recordings:

12

a.   During their phone calls, MURADYAN indicated to the CI, in substance and in part, that he had a .44 caliber revolver and a 9mm caliber firearm to sell, as well as a "Glock switch."

b.   MURADYAN and the CI also discussed, in substance and in part, the quantity of the methamphetamine that the CI was going to purchase on September 8, 2021.  MURADYAN stated to the CI that the price of the pound of methamphetamine was $1,800.

35.   On September 8, 2021, at approximately 6:23 p.m., the CI, in a recorded telephone call, called MURADYAN at the same phone number.  Based on my review of the recording of this phone call, I know the following:

a.   MURADYAN and the CI discussed, in substance and in part, the location and time of the purchase of firearms and methamphetamine.  MURADYAN stated to the CI, "I got everything ready to go.  It's all at the house. I just have to grab it real quick."

   i.   Based on my training and experience and my participation in this investigation, I believe that MURADYAN was referring to firearms and methamphetamine when he stated "I got everything ready to go."  Further, I believe MURADYAN was referring to his residence when he stated "It's all at the house.  I just have to grab it real quick."

36.   At approximately 7:15 p.m., the CI arrived at the Best West Car Wash located at 8263 Laurel Canyon Boulevard, North Hollywood, California and waited for MURADYAN's arrival.

37. At approximately 7:43 p.m., surveillance units observed MURADYAN's second vehicle stop and park on the street in front his residence.

38. Surveillance units then observed MURADYAN drive away from his residence in his second vehicle and later arrive to the car wash at approximately 7:55 p.m., parking near the CI's location. Surveillance units observed the CI enter the front passenger seat of MURADYAN's second vehicle.

39. Based my review of reports, the CI's audio and video recordings, and my conversations with other law enforcement agents, I know the following:

    a. Inside the vehicle, MURADYAN produced the firearms and methamphetamine and gave them to the CI. The items included, specifically:

        i. One Glock machinegun conversion device;

        ii. One FNH, model 509, 9mm caliber, semi-automatic handgun, bearing serial number GKS0175234, with a corresponding 12 round, high capacity, 9mm caliber magazine;

            (I) I learned that ATF Special Agent James Gustaw determined that this firearm was originally purchased in the Las Vegas area of Nevada by an individual other than MURADYAN, and therefore had been transported across interstate lines to California;

        iii. A large clear plastic bag containing a white crystal-like substance resembling methamphetamine, approximating one pound in weight;

14

   b. The CI gave MURADYAN $2,000 for the handgun, $600 for the Glock machinegun conversion device, and $1,800 for the methamphetamine.

   c. During the exchange, MURADYAN and the CI discussed future firearm transactions with each other.

   d. After the money exchange, the CI exited MURADYAN's vehicle with the methamphetamine and firearms, carried them to the CI's vehicle, and placed them inside.

  40. In September of 2021, ATF SA Alexander Liwienski examined the FNH semi-automatic handgun purchased from MURADYAN and confirmed that it was manufactured outside of the State of California.

  41. At my request, the DEA Southwest Laboratory analyzed the approximately one pound of suspected methamphetamine MURADYAN sold to the CI on September 8, 2021. Based on my review of the DEA Chemical Analysis Report, I am aware that the substance tested positive for 423 grams of methamphetamine.

  **G.** **MURADYAN Arranges to Sell a Machinegun, an AR-15 Style Rifle, Two Handguns and a Pound of Methamphetamine on September 29, 2021**

  42. In the days after the controlled purchase on September 8, 2021, the CI and MURADYAN spoke in recorded phone calls and exchanged text messages about further firearms sales. Based on my review of the recordings of these conversations and of the text messages, I know the following:

   a. During their phone calls, MURADYAN indicated, in both coded and non-coded language, that he had a fully automatic

15

rifle, an AR-15 style rifle, and handguns available to sell to the CI.

   b. MURADYAN sent a text message to the CI containing a photograph depicting two handguns.

   c. On September 28, 2021, MURADYAN agreed to sell the CI the "fully auto" rifle for $4,000; an "AR" for $3,000; two handguns for $2,000 each; and a pound of methamphetamine for $1,800.  MURADYAN and the CI agreed to meet on September 29, 2021.

    i. Based on my training and experience and my participation in this investigation, I believe that MURADYAN was referring to a fully automatic rifle when he stated "fully auto," and to an AR-15 style rifle when he stated "AR."

  **H. A Federal Search Warrant is Executed**

  43. On September 24, 2021, the Honorable Margo A. Rocconi, United States Magistrate Judge, issued warrants to search MURADYAN, his vehicles, and his residence for evidence, fruits, or instrumentalities of violations of 18 U.S.C. § 922(a)(1)(A) (Dealing Firearms Without a License); 18 U.S.C. § 922(g)(1) (Felon In Possession Of A Firearm And Ammunition); 26 U.S.C. § 5861(d) (Possession Of An Unregistered Firearm); 26 U.S.C. § 5861(i) (Possession Of A Firearm Not Identified By A Serial Number); 18 U.S.C. § 922(o) (Possession Of A Machinegun); 21 U.S.C. §§ 846, 841(a)(1) (Conspiracy, Distribution, and Possession With Intent To Distribute Controlled Substances); and 18 U.S.C. § 924(c) (Possession Of A Firearm During And In

Relation To, and Carrying A Firearm In Furtherance Of, A Drug Trafficking Crime).

44. Following a controlled purchase on September 29, 2021, the federal search warrant was executed at MURADYAN's residence, located at 8112 Laurelgrove Avenue, North Hollywood, California, 91605; MURADYAN's vehicle, a 2007 Silver Mercedes-Benz sedan bearing California license plate 6ZEL932; MURADYAN's second vehicle, a 2012 International tow truck, bearing Nevada license plate 844M08; and MURADYAN's person.

45. Based on my conversations with other law enforcement agents, and my own participation in the execution of the search warrant, I am aware of the following:

    a.   Law enforcement seized from MURADYAN's residence approximately 20 firearms, including a suspected sawed-off shotgun and a suspected AK-47 rifle; hundreds of rounds of assorted ammunition; and firearms and ammunition component parts.

    b.   Law enforcement seized from MURADYAN's tow truck one round of ammunition.

    **I.**   **MURADYAN Does Not Hold a Federal Firearms License**

46. At my request, ATF Industry Operations Investigator Kyu Lee checked law enforcement databases and confirmed that MURADYAN does not hold, and has never held, a Federal Firearms License ("FFL"). As such, MURADYAN does not have a license to engage in the business of dealing in firearms.

**J.    MURADYAN Does Not Have Any Firearms Registered to Him in the National Firearms Registry**

47.   At my request, ATF Industry Operations Investigator ("IOI") Kyu Lee conducted a query into the National Firearms Registration and Transfer System.  This database contains information on all firearms covered by the National Firearms Act ("NFA"), which includes short barrel rifles and machineguns.  My colleague determined that MURADYAN does not have any NFA firearms registered to him.

**K.    MURADYAN Is Prohibited from Possessing Firearms**

48.   Prior to the purchase of firearms on August 25, 2021, TFO Vasquez and I reviewed MURADYAN's criminal history and learned that MURADYAN has two previous felony convictions:

a.    On or about May 7, 2009, MURADYAN was convicted of a felony for a violation of California Penal Code § 459, Burglary, in the Superior Court of the State of California, County of Los Angeles, Case number LA059043; and

b.    On or about January 20, 2011, MURADYAN was convicted of a felony for a violation of California Penal Code § 459, Burglary, in the Superior Court of the State of California, County of Los Angeles, Case number LA063412.

49.   Based on MURADYAN's felony convictions, he is prohibited from owning or possessing firearms.

//

//

## CONCLUSION

50. For all the reasons described above, there is probable cause to believe that MURADYAN has committed a violation of 21 U.S.C. § 841(a)(1).

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 30th day of
September, 2021.

_____
HONORABLE ALEXANDER F. MACKINNON
UNITED STATES MAGISTRATE JUDGE